## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**GREGORY R., [1]**

   **Plaintiff,**

 **v.**          **Civil Action 2:21-cv-1817**
               **Judge Sarah D. Morrison**
               **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY**

   **Defendant.**

## REPORT AND RECOMMENDATION

 Plaintiff, Gregory R., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB").  This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 20), and the administrative record (ECF No. 11).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's determination.

### I.  BACKGROUND

 Plaintiff protectively filed a DIB application on March 6, 2019, alleging that he became disabled on January 1, 2018.  (R. at 162–68.)   After Plaintiff's application was denied initially

---

[1] Pursuant to this Court's General Order 22–01, claimants in Social Security matters are referred to by first name and last initial.

and on reconsideration, a telephone hearing was held on September 24, 2020, before

Administrative Law Judge David Kurtz (the "ALJ"). (R. at 34–59.) Plaintiff, represented by

counsel, appeared and testified, as did a vocational expert ("VE"). The ALJ issued an

unfavorable determination on October 27, 2020. (R. at 7–24.) The Appeals Council

subsequently declined to review that determination, rendering it final for purposes of judicial

review. (R. at 1–6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff asserts that the ALJ erred when evaluating medical opinion evidence and that the

ALJ lacked authority to issue a disability determination because the statute governing removal of

the Commissioner of Social Security is unconstitutional. The Commissioner contends that

Plaintiff's claims lack merit, and the undersigned agrees.

## II.      THE ALJ'S DECISION

The ALJ issued his unfavorable determination on October 27, 2020, finding that Plaintiff

was not disabled within the meaning of the Social Security Act. (R. at 7–24.) First, the ALJ

found that Plaintiff met the insured status requirements of the Social Security Act through June

30, 2023. (R. at 12.) At step one of the sequential evaluation process, the ALJ found that

Plaintiff had not engaged in substantial gainful activity since January 1, 2018, his alleged onset

date. (Id.) At step two, the ALJ found that Plaintiff had the following severe impairments:

residuals of hip replacement, hepatitis C infection, inflammatory bowel disease ("IBD"),

depression/bipolar disorder, and substance use disorder. (Id.) At step three, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(R. at 13.) The ALJ then set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform sedentary work as defined in 20 CFR

2

404.1567(a) except with the following additional limitations: occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop; avoid concentrated exposure to hazards; perform simple, routine, and repetitive tasks performed in a work environment that is free from fast-paced production requirements, involving only simple work-related decisions and routine workplace changes; occasional interaction with supervisors and coworkers with no tandem tasks; and no interaction with the public.

(R. at 15.)

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a street light servicer, a furniture assembler, a landscape specialist, a material handler, or a laborer/brush clearer. (R. at 18.) At step five, relying on testimony from the VE, the ALJ determined that in light of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform, such as a laminator, final assembler, and small parts assembler. (R. at 18–19.) As a result, the ALJ determined that Plaintiff was not disabled under the Social Security Act from January 1, 2018, through the date of the ALJ's determination. (R. at 19.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that  finding 'even if there is substantial evidence in the record that would have supported an opposite  conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109  F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.     ANALYSIS

As set forth above, Plaintiff alleges that remand is required because the ALJ erred when evaluating medical opinion evidence and because he was deprived of a valid administrative adjudicatory process as a result of the unconstitutionality of the statute governing removal of the Commissioner.  The undersigned addresses these contentions of error in turn.

## A.     Medical Opinion Evidence

Plaintiff contends that the ALJ erred when evaluating opinion evidence from his treating psychiatrist, Yakov Sherk, M.D.  Plaintiff challenges the ALJ's evaluation in two ways.  First, Plaintiff asserts that the ALJ failed to follow the regulations governing how an ALJ must evaluate the persuasiveness of medical opinions.  (ECF No. 12, PageID # 609–12.)  Plaintiff next asserts that the ALJ improperly considered evidence about his substance abuse issues when

evaluating and discounting Dr. Sherk's opinions.  (*Id.*, PageID # 612–14.)  Neither argument has merit.

### 1.      Evaluating Medical Opinions Under the Governing Regulations

At issue are two documents—a questionnaire that Dr. Sherk completed on July 10, 2019, and a check box form completed by Dr. Sherk on September 9, 2020.  (R.  423–25, 505–07.) Plaintiff contends that the ALJ failed to properly evaluate the medical opinions in these two documents as required by 20 C.F.R. § 404.1520c.  (ECF No. 12 at PageID # 609–12; ECF No. 20, PageID # 709–10.)  The Commissioner asserts that the statements made by Dr. Sherk in these documents do not constitute medical opinions, and therefore, the ALJ was not required to evaluate them according to this regulation.  (ECF No. 13 at PageID # 638–39.)  Moreover, the Commissioner asserts that even if the statements in the documents constituted medical opinions, the ALJ's evaluation of them was regulation compliant.  (*Id.* at PageID # 639–45.)  The undersigned agrees in part.

### a.      Definitions of Medical Opinions and Other Types of Evidence

Because Plaintiff's claim was filed after March 27, 2017, his claim is subject to newer regulations governing how an ALJ must consider and articulate medical opinion evidence.  *See* 20 C.F.R. §§ 404.1520c; 404.1513.  Those regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(1)-(5).  The regulations also define all five categories, three of which are relevant here.

Objective medical evidence is defined as "medical signs, laboratory findings, or both." §§ 404.1513(a)(1).  Other medical evidence is defined as "evidence from a medical source that is

not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." §§ 404.1513(a)(3). "Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
> > (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> >
> > (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> >
> > (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> >
> > (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .

§§ 404.1513(a)(2).

### i.      The July 10, 2019 Questionnaire

The Commissioner asserts that the July 10, 2019 questionnaire does not contain medical opinions because Dr. Sherk's[2] statements in that document do not convey what Plaintiff is still able to do despite his mental health impairment. The undersigned agrees that the majority of Dr. Sherk's statements in this document do not constitute medical opinions.

Dr. Sherk made all the following statements in the July 10, 2019 questionnaire, none of which reflect what Plaintiff can do despite his symptoms or diagnoses. Plaintiff's mood changes

---

[2] The parties do not dispute that Dr. Sherk is a medical source.

from depressed to irritable, and he has constricted affect. (R. at 424.) Due to depression and labile mood, Plaintiff's frustration tolerance is low, and he has low levels of concentration. (*Id*.) Plaintiff has diminished interests and a lack of self-care. (*Id*.) Plaintiff spends most of his time at home and has limited social interactions. (*Id*.) Plaintiff had depression and labile mood on a daily basis. (*Id*.) Plaintiff's symptoms had persisted for years, his response to treatment was limited, and he was medication compliant. (R. at 425.) Plaintiff has a low tolerance to stress. (*Id*.) Plaintiff is capable, however, of managing any benefits he might be due. (*Id*.) Plaintiff's diagnosis is bi-polar disorder, with current episode depressed. (*Id*.)

As the Commissioner correctly notes, these statements are not medical opinions because they fail to convey information about Plaintiff's work-related functional limitations. *See Phillips v. Comm'r of Soc. Sec.*, No. 5:20-CV-01718-CEH, 2021 WL 5603393, at *7 (N.D. Ohio Nov. 30, 2021) ("Dr. Marshall's letters provided only medical history, observations, diagnoses, and that claimant is disabled and unable to work. None of this can be considered a 'medical opinion . . . . ' There was no statement about what Claimant could or could not do or whether he had any impairment-related limitations.") (internal citations omitted); *Mercado v. Comm'r of Soc. Sec.*, 1:20-CV-02253-BYP, 2021 WL 5496678, at *7 (N.D. Ohio Nov. 4, 2021) ("Dr. Ahmed's letters provided only medical history, diagnoses, and that Claimant may be unable to work. None of this can be considered a 'medical opinion.'"), *report and recommendation adopted*, No. 1:20CV2253, 2021 WL 5494888 (N.D. Ohio Nov. 2, 2021). Instead, these statements focus on describing, for instance, Plaintiff's symptoms, his response to treatment, and his medical history. Consequently, they constitute "other medical evidence" which, as explained above, includes "judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." § 404.1513(a)(3).

On the other hand, Dr. Sherk also wrote the following statement in the July 10, 2019 questionnaire: due to mood lability and depression, Plaintiff is unable to perform jobs that require attention and stress tolerance. (R. at 424.) The Commissioner seems to assert that this statement does not constitute a medical opinion because it indicates that Plaintiff cannot perform work that involves certain features, and under the regulations, only statements describing what an applicant can do constitute medical opinions. (ECF No. 13, PageID # 639.) The undersigned is not persuaded, however, that the regulations are so rigid as to disqualify statements from a medical source unless they are stated in the affirmative. In any event, in this case, the affirmative statement can be inferred— Dr. Sherk wrote that Plaintiff is unable to perform jobs that require attention and stress tolerance. That relatedly conveys the opinion that Plaintiff could perform work that does not include such features. Accordingly, the undersigned finds that although most of the statements in this document do not constitute medical opinions, this statement does.

## ii.    The September 9, 2020, Check-box Form

The Commissioner also asserts that the September 9, 2020 check-box form does not contain medical opinions because the statements in it similarly fail to convey what Plaintiff is still able to do despite his mental health impairment. The undersigned does not agree.

The check-box form asked Dr. Sherk to use a five-category rating system to rate Plaintiff's degree of impairment in certain areas. (R. at 505–07.) Those five categories were defined as follows: "None" indicated no limitations; "mild" indicated an inability to function in a rated area for less than 10 percent of a workday or week; "moderate" indicated an inability to function in a rated area for 11 to 25 percent of the workday or week; "marked" indicated an inability to function in a rated area for 26 to fifty percent of a workday or week; "extreme"

indicated an inability to function in a rated area for greater than 50 percent of a workday or week.  (R. at 505.)

Using that rating system, Dr. Sherk checked boxes indicating that he rated Plaintiff's degree of limitation as extreme in all of the following areas involving social interaction: accepting instruction or responding appropriately to criticism from supervisors; working in coordination or proximity to others without distracting them or exhibiting behavioral extremes; responding appropriately to coworkers or peers; and relating to the general public and maintaining socially appropriate behavior.  (*Id*.)  Dr. Sherk further indicated that the rating that he assigned to these tasks would not change if Plaintiff's job only required minimal contact or interaction with others.  (*Id*.)

Dr. Sherk also rated Plaintiff's degree of limitation as extreme in all of the following areas involving sustained concentration and persistence: the ability to perform and complete tasks in a normal workday or week; work in cooperation with or proximity to others without being distracted by them; process subjective information and use appropriate judgment; carry through instructions and complete tasks independently; maintain attention and concentration for more than brief periods; and perform at production levels expected by most employers.  (R. at 506.)

Dr. Sherk next rated Plaintiff's degree of limitation as extreme in the following areas involving adaptation: the ability to respond appropriately to changes in work setting; behave predictably, reliably, and in an emotionally stable manner; maintain personal appearance and hygiene; and tolerate customary work pressures.  (R. at 506–07.)  Dr. Sherk also rated Plaintiff's degree of limitation as marked in two areas involving adaptation: the ability to remember locations, workday procedures, and instructions; and being aware of normal hazards and taking

necessary precautions.  (R. at 506.)  Dr. Sherk additionally wrote that Plaintiff would be likely to have two or more partial or full absences every month and that his condition was liable to deteriorate if he was placed under the stress of eight-hour workdays during a five-day work week.  (R. at 507.)

Again, the Commissioner appears to assert that these statements do not constitute medical opinions because they indicate that Plaintiff was unable to perform certain functions for certain percentages of a workday or workweek and that the regulations instead require that opinions affirmatively indicate what an applicant can do.  (ECF No. 12, PageID # 639.)  And again, the undersigned is not persuaded that medical sources' statements must be made in the affirmative in order to qualify as medical opinions, and in any case, finds that affirmative statements can again be inferred in this circumstance.  When Dr. Sherk indicated that Plaintiff could not, for instance, accept instructions or respond appropriately to criticism from supervisors for more than 50 percent of a workday, he relatedly indicated that Plaintiff could do so for some amount less than 50 percent of a workday.  (R. at 505.)  When Dr. Sherk indicated that Plaintiff could not, for example, be aware of normal hazards and take necessary precautions for 26 to 50 percent of a workday, he relatedly indicated that Plaintiff could do so for between 50 to 74 percent of a workday.  (R. at 506.)  Accordingly, the undersigned finds that the statements in the September 9, 2020 check-box form constitute medical opinions.

### b.    The ALJ's Evaluation of Dr. Sherk's Medical Opinions

The Commissioner asserts that even if Dr. Sherk's statements in the two documents constitute medical opinions, the ALJ's assessment of them passes muster.  The undersigned agrees.

Under the new regulations, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider the following five factors when evaluating the persuasiveness of medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Social Security Administration's] disability program's policies and evidentiary requirements." § 404.1520c(c)(1)–(5). Of the five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. § 404.1520c(b)(2). Although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." § 404.1520c(b)(3). In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each opinion individually. § 404.1520c(b)(1). Instead, the ALJ may "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id.*

The regulations also explain the "supportability" and "consistency" factors that must be articulated:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)–(2).

In practice, this means that the supportability factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.,* No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021).  And the consistency factor relates to an opinion's congruence with evidence from other sources, including other medical sources.  § 404.1520c(c)(2).

Here, the ALJ considered Dr. Sherk's medical opinions and found that they were unpersuasive.   (R. at 17.)  The ALJ articulated his reasons for doing so as follows:

> The claimant's treating psychiatrist, Dr. Sherk Yakov, opined multiple times that the claimant was unable to work due to acute mood anomalies, poor stress tolerance, limited social interaction, and cognitive deficits, all of which caused marked-to-extreme mental limitations (4F; 8F).  These opinions are unpersuasive.  Although the record evidence supports the conclusion that the claimant has some degree of social, cognitive, and adaptive limitation due to his mental impairments, the author's own grossly unremarkable mental status findings and assessments of only mildly severe mental impairments in the record are incongruent with the significant and debilitating degrees of limitation alleged in this opinion (e.g., 9F, 6). Moreover, the author did not include a consideration of the claimant's substance abuse, so the opinions do not provide a basis for determining the contributory impact of the claimant's substance abuse upon his mental functioning.

(*Id.*)

As this discussion demonstrates, the ALJ did not use the term "supportability." Nevertheless, the ALJ explained that the limitations opined by Dr. Sherk were incongruent with Dr. Sherk's "grossly unremarkable mental status findings."  (*Id.*)  Stated differently, the ALJ discounted Dr. Sherk's medical opinions because objective evidence in Dr. Sherk's medical records (*i.e.*, his mental status examination findings) were

12

relatively benign.  That is consistent with the governing regulations, which provide that

supportability is related to an opinion's reference to objective evidence.

§ 404.1520c(c)(1).

Plaintiff complains that although the ALJ indicated that he discounted Dr. Sherk's

medical opinions because they were belied by Dr. Sherk's examination findings, the ALJ did not

satisfy the articulation requirement because he failed to explain precisely how that was so.  (ECF

No. 12, PageID # 611.)  The undersigned agrees that although the new regulations are less

demanding than the former rules governing the evaluation of medical opinions and findings

"they still require that the ALJ provide a coherent explanation of his reasoning."  *Lester v. Saul*,

No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and

recommendation adopted sub nom., Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL

119287 (N.D. Ohio Jan. 13, 2021).  As one Court recently explained,

> The new regulations "set forth a 'minimum level of articulation' to be provided in
> determinations and decisions, in order to 'provide sufficient rationale for a
> reviewing adjudicator or court.'"  *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495,
> 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01
> (2017)).  An "ALJ's failure . . .  to meet these minimum levels of articulation
> frustrates [the] court's ability to determine whether [claimant's] disability
> determination was supported by substantial evidence."  *Vaughn v. Comm'r of Soc.
> Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

*Hardy v. Comm'r of Soc. Sec.*, No. 20-101918, 2021 WL 3702170, at *4 (E.D. Mich.

Aug. 13, 2021).  But the undersigned finds that standard was met here.  The ALJ

indicated that the "significant and debilitating degrees of limitation" opined by Dr. Sherk

were belied his "grossly unremarkable examination findings" which the ALJ discussed

elsewhere in the determination. (R. at 17.) That provided a sufficient rationale for this Court's review.

Substantial evidence also supports that determination. As an initial matter, Dr. Sherk did not refer to any objective evidence, such as his examination findings, in the documents he authored on July 10, 2019, and September 20, 2020. (R. at 424–25, 505–07.) Moreover, as the ALJ correctly explained, Dr. Sherk's examination findings were generally unremarkable. The record reflects that Dr. Sherk routinely found that Plaintiff had appropriate dress and grooming (R. at 419, 413, 409, 404, 400, 395, 392, 548, 543, 540, 536, 532); normal associations (R. at 419, 413, 409, 404, 400, 395); he was oriented (R. at 419, 413, 409, 404, 395, 392, 548, 536, 532); his recent memory was intact (R. at 419, 413, 409, 404, 400, 395, 392, 548, 540, 536, 532); he had normal speech (R. At 419, 413, 409, 404, 400, 395, 392, 548, 543, 540, 536, 532, 529); he had no abnormal or psychotic thoughts (R. at 419, 409, 404, 400, 395, 392, 548, 540, 536, 532, 523, 519); his insight and judgment were good (R. at 419, 413, 409, 404, 400, 395, 392); his language was intact (R. at 419, 413, 409, 404, 400, 395, 392, 548, 543, 540, 536, 532); his thought process and content were coherent (R. at 419, 414, 409, 404, 400, 395); his fund of knowledge was within normal limits (R. at 419, 414, 405, 400, 395, 392, 548, 543, 540, 536, 532); and he denied suicidal and homicidal ideation (R. at 419, 414, 410, 405, 400, 395, 392, 548, 543, 540, 536, 532, 529, 526, 523, 519).

Notably, although Dr. Sherk opined that Plaintiff was not capable of work that required attention (R. at 424), and he opined that Plaintiff's degree of limitation was "extreme" with regard to various functions involving concentration and persistence (R. at 506), Dr. Sherk also regularly found that Plaintiff's attention and concentration were

focused (R. at 419, 413, 409, 404, 400, 395, 392). Indeed, Dr. Sherk noted only once that

with regard to attention and concentration, Plaintiff was easily distracted. (R. at 540.) Of

additional note, Dr. Sherk routinely indicated in his notes that although Plaintiff was not

at goal, his condition was stable or improving. (R. at 414, 410, 405, 401, 395–96, 392–

93, 548, 535, 532, 526, 523, 519)

Plaintiff also asserts that "Dr. Sherk's treatment notes contain plenty of support for" the

at-issue opinions. (ECF No. 12, PageID # 611.) In support, Plaintiff cites instances where Dr.

Sherk noted some irregular mental status findings, as well as instances where Dr. Sherk made

changes to Plaintiff's course of treatment. (*Id.*) However, the fact that some records could

support more extreme limitations does not warrant reversal. In a "situation in which the record

evidence could support two different conclusions . . . the law obligates the court to affirm the

ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably

true." *Waddell v. Comm'r of Soc. Sec.*, 2018 WL 2422035 at *10 (N.D. Ohio May 10, 2018),

*report and recommendation adopted*, 2018 WL 2416232 (May 29, 2018); *see also Mullen v.*

*Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows

considerable latitude to administrative decision makers. It presupposes that there is a zone of

choice within which the decisionmakers can go either way, without interference by the courts.

An administrative decision is not subject to reversal merely because substantial evidence would

have supported an opposite decision.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.

1984)).

The ALJ also did not use the term "consistency" when articulating his reasons for

discounting Dr. Sherk's opinions. (R. at 17.) Nevertheless, the ALJ explained that the

limitations opined by Dr. Sherk were incongruent with other "assessments of only mildly severe

mental impairments in the record." (*Id*.) That is consistent with the regulations, which provide that the consistency factor is related to an opinion's congruence with evidence from other medical providers. *See* 20 C.F.R. § 404.1520c(c)(2).

Substantial evidence also supports that determination. The record reflects that examinations by others regularly resulted in normal findings. For instance, on January 1, 2018, a mental status examination by an LPCC found that Plaintiff's appearance was neat and appropriate for the season. (R. at 358.) Plaintiff's affect and mood were appropriate, euthymic, and variable; he was oriented to person, place, time, and circumstances; his speech was normal and circumstantial; he had good insight and judgment; and he had no suicidal or homicidal ideation. (*Id*.) On April 2, 2018, Plaintiff reported to an APRN-CNP, that although he felt down and depressed, he had no issues with concentration problems. (R. at 498.) Upon examination that day, his affect was normal. (R. at 499.) On November 8, 2018, an examination by a LISW-S found that Plaintiff had an anxious mood, but his affect was full, his thought processes were not disorganized, and Plaintiff was cooperative. (R. at 297.) On November 8, 2018, a mental status examination by Radhika Gollapudy, M.D., found that Plaintiff's thoughts and processes; associations; threat of harm to himself or others; abnormal or psychotic thoughts; orientation; recent and remote memory; attention span and concentration; language; speech; and fund of knowledge were all within normal limits. (R. at 300.) On March 22, 2019, an APRN-CNP found that Plaintiff's mood and affect were within normal limits. (R. at 308.) Likewise, Plaintiff was in no distress, and he was alert and had a normal affect during an examination on May 8, 2019. (R. at 312–13.) Similarly, Plaintiff was alert, and his mood, affect, and behavior were all normal on July 8, and July 25, 2019. (R. at 432, 430.)

In sum, the undersigned finds that the July 10, 2019 questionnaire and the September 9, 2020 check-box form contain medical opinions. The undersigned further finds that the ALJ properly considered those medical opinions pursuant to the regulations governing the consideration and articulation of such evidence. Plaintiff's assertions to the contrary lacks merit.

### 2. Consideration of Substance Abuse Issues

When discussing Dr. Sherk's opinion, the ALJ wrote that Dr. Sherk "did not include a consideration of the claimant's substance abuse, so the opinions do not provide a basis for determining the contributory impact of the claimant's substance abuse upon his mental functioning." (R. at 17.) Relying on the Sixth Circuit Court of Appeals' decision in *Gayheart v. Comm'r. of Soc. Sec.*, 710 F. 3d 365, 376 (6th Cir. 2013), Plaintiff maintains that the ALJ erred by considering his substance abuse issues when weighing Dr. Sherk's opinions because it was

improper for the ALJ to consider his substance abuse issues unless the ALJ first found that he was disabled.  (ECF No. 12, PageID # 612–14.)

In *Gayheart*, the Sixth Circuit explained that "[a]lcohol abuse is not a factor to be considered in determining the weight to be given to a treating-source opinion" under the regulations used to evaluate medical opinion evidence for claims filed before March 27, 2017. 710 F. 3d at 381.  The Sixth Circuit also reversed and remanded the ALJ's non-disability determination in that matter because the ALJ failed to provide good reasons for refusing to give the treating physician's opinion controlling weight and for failing to properly weigh that doctor's opinion under the regulatory factors in 20 C.F.R. § 404.1527(c).  710 F.3d at 376–78.  The Sixth Circuit instructed that if the plaintiff was found to be disabled on remand, "the materiality of his alcohol abuse needs to be reevaluated with proper attention to the record." *Id.* at 381.  But here, even if the ALJ erred by referring to Plaintiff's history of substance abuse when considering Dr. Sherk's opinions, such error was harmless because unlike the situation in *Gayheart*, as explained above, the ALJ offered other record-based reasons for finding that Dr. Sherk's opinions were not persuasive.  *See Massey v. Comm'r of Soc. Sec.*, No. 1:15-CV-744, 2016 WL 4987169, at *9 (S.D.Ohio Sept. 15, 2016) (finding only harmless error where ALJ considered a claimant's substance abuse when weighing a treating physician's opinion and the ALJ provided other reasons that enjoyed substantial record support for the weight that the ALJ assigned to that medical opinion), *report and recommendation affirmed sub nom.*, *Massey on behalf of Ware v. Comm'r of Soc. Sec.*, No. 1:1CV744, 2017 WL 1047695 (S.D. Ohio March 20, 2017). Accordingly, the undersigned finds that this contention of error likewise lacks merit.

B.      **The Constitutionality of the ALJ's Decision**

Plaintiff additionally contends that the statute governing the Commissioner of Social Security's removal from office is unconstitutional, and that this renders the ALJ's decision in this matter invalid. (ECF No. 12, PageID # 615–18; ECF No. 20, PageID # 711–34.) The undersigned disagrees.

As an initial matter, Plaintiff's constitutional claim is procedurally improper. Plaintiff's Complaint does not include any constitutional claims. (*See* ECF No. 1.) Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint need not provide "detailed factual allegations," at a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, the United States Supreme Court case upon which Plaintiff bases his constitutional claim was decided on June 20, 2020. Yet Plaintiff gave no notice, let alone fair notice, of his constitutional claim in his April 13, 2021 Complaint. *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that plaintiff failed to comply with Rule 8 by failing to plead separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. C21-5173-MLP, 2021 WL 5371394, at * 6–7 (W.D. Wash. Nov. 18, 2021) (same). For that reason, Plaintiff failed to comply with Rule 8 such that his constitutional claim is not properly before the Court. Nevertheless, as explained below, Plaintiff's constitutional claim would fail on the merits.

Plaintiff relies on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020). In *Seila Law*, the United States Supreme Court held that the Consumer Financial

Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Id.* at 2197. Because 42 U.S.C. § 902(a)(3), the statute governing the Commissioner of Social Security's removal, contains a similar restriction on the President's ability to remove the Commissioner except for cause, Plaintiff contends that § 902(a)(3) also unconstitutionally violates the separation of powers. As a result, Plaintiff argues, "[t]he ALJ and Appeals Council judges here adjudicated the plaintiff's disability claim under the delegated authority of a Commissioner who had no constitutionally valid legal authority to delegate." (Pl.'s Reply 6, ECF No. 20.)

However, even assuming § 902(a)(3)'s removal provision is unconstitutional, remand is not necessarily required. In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), decided the year after *Seila Law*, the Supreme Court considered a similar statute governing removal of Directors of the Federal Housing Finance Agency ("FHFA"). The *Collins* majority held that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [ ] as void." *Id.* at 1787 (emphasis in original); *see also id.* at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director of the power to undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at 2207–2211)). Instead, to obtain reversal of an agency decision, a plaintiff would need to demonstrate "compensable harm" flowing from the unconstitutional removal clause. *See id.* at 1788–89 (remanding for further proceedings to determine whether compensable harm to the plaintiff

occurred due to the President's inability to remove a Director of the Federal Housing Finance Agency except for cause).

Here, Plaintiff has made no showing of any possible compensable harm flowing from § 902(a)(3). Nor is it likely Plaintiff could, because the President's choice of Social Security Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision. *Cf. Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all— would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Indeed, courts that have considered this question have uniformly concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand. *See, e.g.*, *Crawford v. Comm'r of Soc. Sec.,* No. 2:21-cv-726, 2021 WL 5917130, at *8 (S.D. Ohio Dec. 14, 2021); *Rhouma v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. 4:20-cv-2823, 2021 WL 5882671, at *9–11 (N.D. Ohio Dec. 13, 2021); *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021); *Alice T. v. Comm'r Soc. Sec.*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630-GPC(BLM), 2021 WL 5634177, at *3 (S.D. Cal. Dec. 1, 2021). The undersigned finds the reasoning of these cases persuasive and reaches the same result.

## VI. DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's non-disability determination.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report and Recommendation, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report and Recommendation or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review it *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE